UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :    04 CIV. 4099 (DLC)
DE BEERS LV TRADEMARK LIMITED and       :
DE BEERS LV LIMITED,                     :    OPINION AND
                                        :         ORDER
                    Plaintiffs,          :
                                        :
        -v-                             :
                                        :
DeBEERS DIAMOND SYNDICATE INC. and      :
MARVIN ROSENBLATT                       :
                                        :
                    Defendants.          :
                                        :
----------------------------------------X

Appearances:

For Plaintiffs:
Marie V. Driscoll
Barbara A. Solomon
James D. Weinberger
Fross Zelnick Lehrman & Zissu, P.C.
866 United Nations Plaza
New York, New York 10017

For Defendants:
Paul R. Levenson
Steven M. Kaplan
Ashima Aggarwal
Kaplan & Levenson LLP
630 Third Avenue
New York, New York 10017

DENISE COTE, District Judge:

    Plaintiffs De Beers LV Limited ("De Beers LV") and De Beers

LV Trade Mark Limited (De Beers LV Trade Mark") bring claims

against DeBeers Diamond Syndicate Inc. ("Syndicate") and its

president, Marvin Rosenblatt ("Rosenblatt").  They allege a

violation of Section 43(a) of the Lanham Act, 15 U.S.C. §

1125(a), and unfair competition and trademark dilution violations

under New York law.

This Opinion addresses plaintiffs' motions to strike the affirmative defenses of unclean hands and lack of standing and considers plaintiffs' motions to dismiss defendants' counterclaims for a declaratory judgment and alleging conspiracy in restraint of trade under the Sherman Antitrust Act. The counterclaims name the plaintiffs and several additional counterclaim defendants: De Beers Consolidated Mines, Limited ("Consolidated Mines"); De Beers Centenary AG ("Centenary"); and De Beers Trademarks Limited ("Trademarks") (collectively, the "Additional Counterclaim Defendants"). This Opinion also addresses defendants' motion to join the Additional Counterclaim Defendants as necessary parties to the action under Rule 19, Fed. R. Civ. P.

For the reasons stated below, the affirmative defense of unclean hands is stricken. The motions to strike the affirmative defense of lack of standing and to dismiss the declaratory judgment counterclaim are denied. The motion to dismiss Sherman Antitrust Act counterclaim is granted. Defendants' motion for joinder is denied.

Background

The following facts are taken from the allegations in the complaint, unless otherwise noted. Plaintiffs were incorporated in the United Kingdom in January 2002. The entities were created as a joint venture between the unspecified "owner of rights in De Beers" and luxury goods producer LMVH Moët Hennessy Louis Vuitton

"to further exploit use of the DE BEERS trade identity in the retail diamond and luxury goods area in the United States and elsewhere."  Plaintiff De Beers LV has been assigned the right to use DE BEERS in the United States as a trademark and service mark for diamonds, jewelry, and other luxury goods.[1]  Plaintiff De Beers LV Trade Mark, a wholly owned subsidiary of De Beers LV, owns the trademark for and has filed applications to register the DE BEERS mark in the United States for luxury goods such as watches and clocks and for "retail store services."

The DE BEERS name has been used for over a century in connection with the diamond mining and distribution business founded in 1888 by Cecil Rhodes.  It was associated in this country, over an unspecified period, with an advertising campaign featuring the slogan "A Diamond Is Forever," although plaintiffs' Memorandum of Law appears to concede that neither products nor services have been sold in the United States under the DE BEERS name.  Plaintiffs trace their rights to the DE BEERS name and trade identity to Consolidated Mines and Centenary.  These entities assigned their rights to Trademarks, which in turn assigned them to De Beers LV.  De Beers LV assigned all or some of its rights to De Beers Trade Mark LV, which, according to plaintiffs' Memorandum, apparently licenses the mark back to De Beers LV for some purposes.[2]

---

[1]The complaint does not indicate whether De Beers LV has filed applications to register the trademark for these purposes.

[2]It is difficult to divine from the complaint or motion papers the precise allocation of rights between De Beers LV and De Beers

Defendant Syndicate was incorporated in Delaware on September 10, 1981. The company became inoperative on March 1, 1986 for failure to file annual reports and for nonpayment of state taxes. In December 2001, defendant Rosenblatt registered approximately thirty-four Internet domain names that include the word DeBeers. On January 15, 2002, Syndicate filed a Certificate of Renewal and Revival of Certificate of Incorporation with the Delaware Secretary of State. On January 29 of that year, Syndicate registered the mark "DEBEERS DIAMOND SYNDICATE" with the U.S. Patent and Trademark Office for use on diamonds and for use in purchasing diamonds for others, wholesale ordering services, and distributorship of diamonds. Each application disclaims exclusive rights to use "DIAMOND SYNDICATE" and lists a first use date of June 1981 and a first use in commerce date of January 2002.

Plaintiffs filed this action on June 1, 2004, alleging trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); unfair competition under New York common law; and trademark dilution in violation of New York General Business Law § 360-1. Defendants answered on September 21, 2004, raising affirmative defenses of failure to join necessary parties, unclean hands, priority of use of the mark "Debeers Diamond Syndicate," and lack of standing. Defendants

_____

LV Trade Mark, but plaintiffs appear to represent that all United States rights to the De Beers trade name for diamonds, jewelry, luxury goods, and retail store services are held by the two plaintiff entities.

also allege counterclaims against plaintiffs and the Additional
Counterclaim Defendants.  The first counterclaim is for a
declaratory judgment that the plaintiffs and Additional
Counterclaim Defendants have no right to use or prevent others
from using the DE BEERS mark in the United States.  The second
counterclaim alleges restraint of trade and interference with
business relationships under Sherman Antitrust Act provisions 15
U.S.C. §§ 1-2.

Discussion

    Plaintiffs have moved to strike defendants' affirmative
defenses of unclean hands and lack of standing.  They have also
moved to dismiss the counterclaims against them.  Defendants have
filed a motion to join the Additional Counterclaim Defendants as
necessary parties to the action under Rule 19, Fed. R. Civ. P.

I.  Motion to Strike the Affirmative Defenses

    A court may strike any "insufficient defense."  Rule 12(f),
Fed. R. Civ. P.  A motion to strike an affirmative defense for
legal insufficiency is "not favored," however.  William Z.
Salcer, Panfeld, Edelman et al. v. Envicon Equities Corp., 744
F.2d 935, 939 (2d Cir. 1985), vacated on other grounds, 478 U.S.
1015 (1986).  Such a motion "will not be granted unless it
appears to a certainty that plaintiffs would succeed despite any
state of the facts which could be proved in support of the
defense."  Id. (citation omitted).  "[W]here the defense is

insufficient as a matter of law," however, "the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." <u>SEC v. KPMG</u>, No. 03 Civ. 671 (DLC), 2003 WL 21976733, at *2 (S.D.N.Y. Aug. 20, 2003) (citation omitted).

A plaintiff must establish three criteria to prevail on a motion to strike an affirmative defense:  First, there must be no question of fact that might allow the defense to succeed. Second, there must be no substantial question of law that might allow the defense to succeed.  Third, the plaintiff must be prejudiced by the inclusion of the defense.  <u>KPMG</u>, 2004 WL 21976733, at *2; <u>see also</u> <u>DGM Investments, Inc. v. New York Futures Exch., Inc.</u>, No. 01 Civ. 11602 (RWS), 2004 WL 635743, at *1 (S.D.N.Y. Mar. 31, 2004).  "Increased time and expense of trial may constitute sufficient prejudice to warrant granting plaintiff's Rule 12(f) motion." <u>Estee Lauder, Inc. v. Fragrance Counter, Inc.</u>, 189 F.R.D. 269, 272 (S.D.N.Y. 1999).


A.   Unclean Hands

Unclean hands may be asserted as an affirmative defense to equitable claims in an action under Lanham Act Section 43(a). <u>See</u> <u>Warner Bros., Inc. v. Gay Toys, Inc.</u>, 724 F.2d 327, 334 (2d Cir. 1983).  "The doctrine of unclean hands is based on the principle that since equity tries to enforce good faith in defendants, it no less stringently demands the same good faith from the plaintiff." <u>Dunlop-McCullen v. Local 1-S, AFL-CIO-CLC</u>,

149 F.3d 85, 90 (2d Cir. 1998) (citation omitted).  Misconduct

that is "unrelated to the claim to which it is asserted as a

defense," however, "does not constitute unclean hands."  Id.

(citation omitted).  Thus, "the defense of unclean hands applies

only with respect to the right in suit."  Id. (citation omitted).

The unclean hands defense under New York law is virtually

identical.  In New York, courts in equity "apply the maxim

requiring clean hands where the party asking for the invocation

of an equitable doctrine has committed some unconscionable act

that is directly related to the subject matter in litigation and

has injured the party attempting to invoke the doctrine."

PenneCom, B.V. v. Merrill Lynch & Co., 372 F.3d 488, 493 (2d Cir.

2004) (citation omitted).

The defendants assert the unclean hands defense "based on

the fact that the alleged worldwide fame of DEBEERS . . . was

achieved by anti-competitive, monopolistic, and inequitable

conduct by plaintiffs' alleged predecessors in interest to

DEBEERS around the world."  Defendants allege that various De

Beers entities have engaged in monopolistic behavior, have acted

to restrain competition, have pled guilty to fixing the prices of

industrial diamonds, and have been the subject of criminal

investigations and prosecutions, including "for securing the

cooperation of oppressive regimes to obtain access to diamond

rich land."  In support of these allegations, they list several

specific lawsuits and prosecutions in which Centenary and

Consolidated Mines are or have been defendants.[3]  The defendants

also cite a history page on a De Beers corporate web site in

support of the assertion that "it is publicly acknowledged that

[Centenary and Consolidated's] business successes are due to

their continuous efforts to restrain the competitive forces of

the free market."

As grave as the monopolistic behavior that defendants

allege may be, their allegations are not sufficiently related to

the subject matter of the action to support an affirmative

defense of unclean hands.  Defendants do not allege that

plaintiffs have misused their trademarks or trade identities in

furtherance of inequitable conduct.  In contrast, examples of

conduct that might qualify as sufficiently related to a trademark

action to support an unclean hands defense are when a plaintiff

"encouraged or induced the commission of a wrong, or . . . a

trademark, allegedly infringed by the defendant, is itself

deceptive, or . . . the plaintiff procured or maintained his

---

[3]<u>Leider v. Ralfe</u>, No. 01 Civ. 3137 (HB), 2003 WL 22339305
(S.D.N.Y. Oct. 10, 2003) (class action alleging violations of the
Wilson Tariff Act, the Sherman Antitrust Act, and various state
laws stemming from alleged monopolistic conduct of Centenary and
related entities); <u>DeBeers Consolidated Mines, Ltd. v. United
States</u>, 325 U.S. 212 (1945) (regarding an injunction for
conspiracy to monopolize commerce between the United States and
foreign nations in gems and industrial diamonds); <u>In re
Industrial Diamonds Antitrust Litigation</u>, 119 F. Supp. 2d 418
(S.D.N.Y. 2000) (alleging conspiracy to fix the price of
industrial diamonds); <u>W.B. David & Co. v. De Beers Centenary AG</u>,
No. 04 Civ. 5203 (KMW) (S.D.N.Y. filed July 1, 2004) (pleading
thirty claims, including violations of Sherman Act anti-
monopolization provisions, the Wilson Tariff Act, RICO, as well
as state law unfair competition and fraud claims, against
Centenary and related entities).

trademark registrations by false or fraudulent misrepresentations." Louis Altman, <u>Callmann on Unfair Competition, Trademarks and Monopolies</u> § 23:17 (4th ed.) (footnotes omitted). Nor do defendants allege that the alleged monopolistic conduct has injured them, another requirement of the defense.

The prerequisites for striking an affirmative defense under Rule 12(f) are met in this instance. Even if defendants proved every allegation set forth in their answer, such facts would still be insufficient to establish a valid defense of unclean hands. Nor is there any significant question of law regarding whether allegations of malfeasance unrelated to the actual trademark rights being litigated suffice to establish the defense: under the requirement as stated in <u>Dunlop-McCullen</u> that the alleged inequitable conduct be in respect to the right in suit, they clearly do not. And the prejudice the plaintiffs will suffer from inclusion of the affirmative defense is substantial. The existence of a defense based on, among other things, alleged international price fixing and "securing the cooperation of oppressive regimes to obtain access to diamond rich land" will fundamentally alter the scope of discovery in a case that would otherwise involve a relatively narrow set of issues.

A case cited by defendants, <u>Estee Lauder</u>, 189 F.R.D. 269, does not assist them. In his discussion, the Honorable Robert W. Sweet emphasized that, when an antitrust-related unclean hands defense is raised in a trademark infringement case, "an essential

element [of the defense] . . . is proof that the mark itself has been the basic and fundamental vehicle required and used to accomplish the violation." Id. at 272 (citation and alteration omitted). Moreover,

> [i]n almost every reported instance where the antitrust misuse of a trademark has been raised as a defense, it has been rejected, because the defendant did not demonstrate that the trademark, as distinguished from collateral activities with respect to goods bearing the trademark, was itself being used as the prime and effective instrument to effectuate the antitrust activity.

Id. (citation omitted) (emphasis supplied). Judge Sweet ultimately refused to grant the plaintiffs' motion to strike, however, because evidence suggested that the plaintiffs were "directly attempting to misuse their trademarks for anticompetitive purposes." Id. at 273. In contrast, the defendants in this case allege the kind of "collateral activities" that are insufficient to establish the defense of unclean hands. The affirmative defense of unclean hands is therefore stricken.[4]

B. Standing

Plaintiffs move to strike the defense of lack of standing, asserting that De Beers LV Trade Mark and De Beers LV have the requisite standing under Lanham Act Section 43(a) because of

---

[4]Because the facts alleged by defendants are not sufficiently related to plaintiffs' claims to support an unclean hands defense, it is unnecessary to reach the issue of whether inequitable conduct by the entities from which plaintiffs received their rights, as opposed to plaintiffs themselves, would be sufficient to establish the defense.

their respective statuses as owner and licensee of the DE BEERS trade name. Section 43(a) of the Lanham Act "allows any person who 'believes that he is or is likely to be damaged' by false representations concerning the origin or qualities of another's goods or services to institute an action." Berni v. Int'l Gourmet Rests. of Am., Inc., 838 F.2d 642, 647-48 (2d Cir. 1988) (quoting 15 U.S.C. § 1125(a)). An unfair competition claim under New York common law "is meant to protect property rights of commercial value[,] and a plaintiff must establish such rights as a prerequisite to relief." Id. (citation omitted). The New York trademark dilution statute requires "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name." N.Y. Gen. Bus. Law § 360-1. The "familiar" Article III requirements for standing apply to all of these claims: "The plaintiff must show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 124 S. Ct. 2301, 2308 (2004). In addition, for standing to exist under Lanham Act Section 43(a), there must be the potential for a "commercial or competitive" injury. Berni, 838 F.2d at 648. Given the nature of the state law claims, the requirement that plaintiff allege a commercial or competitive injury is effectively present for those claims as well.

The standing inquiry is "whether the litigant is entitled to have the court decide the merits of the dispute or of particular

issues." <u>Newdow</u>, 124 S. Ct. at 2308 (citation omitted) (emphasis supplied). Courts have an obligation that is "inflexible and without exception" to resolve threshold questions of jurisdiction and standing <u>before</u> proceeding to consider the merits of a claim. <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 95 (1998) (citation omitted).

The complaint alleges facts sufficient to support standing. Plaintiffs represent that they own the rights to use of the DE BEERS trade name in the United States and set forth facts from which it can be inferred that they intend to sell goods and services under that name in the future. Plaintiffs have alleged that defendants' conduct -- adopting a near-identical trade name and registering Internet sites in that name -- causes them an injury to their business and goodwill, and accordingly of the commercial nature contemplated by the relevant laws, that can be redressed by the injunctive relief and damages they request. This is all that is required for plaintiffs to carry their burden to establish standing at this stage of the litigation.

It cannot be said at this stage, however, that facts could not come to light that would establish that plaintiffs lack standing to bring their claims. If, for example, plaintiffs do not indeed possess the rights they claim pursuant to a valid assignment, the defendants may show that the plaintiffs lack standing to continue the action. Plaintiffs may renew their motion to strike the defense at the summary judgment stage.

II.  Counterclaims

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2), Fed. R. Civ. P.  Pleadings are to give fair notice of a claim and the grounds upon which it rests in order to enable the opposing party to answer and prepare for trial, and to identify the nature of the case.  Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512 (2002).  Because Rule 8 is fashioned in the interest of fair and reasonable notice, not technicality, "extensive pleading of facts is not required."  Wynder v. McMahon, 360 F.3d 73, 77 (2d Cir. 2004) (citation omitted).  If it is clear, however, that "no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed.  Swierkiewicz, 534 U.S. at 514.  In construing the complaint, the court must "accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).


A.  Declaratory Judgment

Plaintiffs move to dismiss defendants' counterclaim for a judgment declaring that the plaintiffs and the Additional Counterclaim Defendants "have no exclusive or enforceable right under federal [or] state law to use, or to prevent others, including plaintiffs, from using the name DE BEERS as a trademark or service mark in connection with any goods or services in the

13

United States."  Defendants premise their declaratory judgment counterclaim on the assertion that plaintiffs have never used the DE BEERS mark in commerce in the United States.  Plaintiffs counter that their rights to the DE BEERS trademark in the United States should be recognized under the "famous marks doctrine," which they assert protects a mark that has only been used on products or services sold abroad but which has achieved requisite fame in the United States to merit legal recognition.

Lanham Act Section 43(a), the law under which plaintiffs bring their federal claim, imposes civil liability on:

> [a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]

15 U.S.C. § 1125(a) (emphasis supplied).  To succeed on a Section 43(a) claim, a plaintiff must establish both "(1) that its trademark is protectable and (2) that the defendant's mark is likely to confuse consumers as to the source or sponsorship of its product."  Playtex Prods. Inc. v. Georgia Pac. Corp., 390 F.3d 158, 161 (2d Cir. 2004).  To prove that its trademark is entitled to protection, a party must establish "prior use and

14

ownership," Virgin Enters., Ltd. v. Nawab, 335 F.3d 141, 146 (2d Cir. 2003), as well as distinctiveness, an inquiry that in essence blends both prongs of the legal test. See Playtex, 390 F.3d at 161. Whether the DE BEERS trademark enjoyed prior use sufficient to entitle it to protection under United States law is the primary issue here.

Although the language of Section 43(a) imposes a requirement of "use[] in commerce" only on the infringing mark, courts impose the requirement that an unregistered trademark in which a plaintiff claims a protectable interest must likewise be used in commerce. See Buti v. Perosa, S.R.L., 139 F.3d 98, 102-103 (2d Cir. 1998) (applying the "use in commerce" inquiry to a foreign entity seeking trademark protection in the United States). Under Section 45 of the Lanham Act, "commerce" is defined as "all commerce which may lawfully be regulated by Congress," 15 U.S.C. § 1127, which is coterminous with the commerce that may be regulated by Congress under the Commerce Clause of the Constitution. Buti, 139 F.3d at 102. Courts apply a related "territoriality" principle, which means that "foreign use has no effect on U.S. commerce and cannot form the basis for a holding [of priority of trademark use]. . . . [T]rademark rights exist in each country solely according to that country's statutory scheme." Person's Co., Ltd. v. Christman, 900 F.2d 1565, 1568-69 (Fed. Cir. 1990); see also Buti, 139 F.3d at 103 (noting "the territorial nature of trademark rights"). The Second Circuit has held that, for a foreign mark to have achieved priority trademark

15

rights in the United States, it must have "conducted [its] affairs . . . in such a way as to substantially affect United States interstate or foreign commerce." Buti, 139 F.3d at 103. Courts have generally held that, to establish priority, the mark must actually have been used in conjunction with sale of goods or performance of services in the United States.[5] See id. (holding that "mere advertising" of a foreign trademark in the United States did not constitute use in commerce under the Lanham Act).

The famous marks doctrine is a "controversial" common-law exception to the territoriality principle. ITC Ltd. v. Punchgini, Inc., No. 03 Civ. 1306 (GEL), 2005 WL 351121, at *10 (S.D.N.Y. Feb. 10, 2005). Under the doctrine, foreign marks are protectable "even without use or registration within the United States, where the mark . . . is so 'well known' or 'famous' as to

_____

[5]A notable expansion of the territoriality principle achieved without reference to the famous marks doctrine occurred in International Bancorp, LLC v. Société Des Bains de Mer et du Cercle des Étrangers à Monaco, 329 F.3d 359, 372 (4th Cir. 2003). International Bancorp involved a dispute between the operator of Monaco's Casino de Monte Carlo and operators of Internet sites that had incorporated the mark into their content and domain names. The court held that, because the Commerce Clause allows Congress to regulate foreign trade by American citizens without regard to whether the activity has a "substantial effect" on interstate commerce, see id. at 368-69, the foreign trademark for a service rendered abroad but advertised and sold to American citizens, and utilized by them, was protectable under the Lanham Act, assuming that the other statutory requirements were met. Id. at 370. The International Bancorp court distinguished Buti, in which the plaintiff conceded that its services did not form trade between the United States and a foreign country and had not engaged in formal advertising or public relations targeting Americans. Id. at 369-70 (citing Buti, 139 F.3d at 103, 100). International Bancorp opined that the mere advertising in the United States of foreign services would not create protectable trademark rights. Id. at 364.

give rise to a risk of consumer confusion if the mark . . . is used subsequently by someone else in the domestic marketplace." Id. at *9. In one foundational New York case, the court upheld an unfair competition claim against a company that had opened a New York restaurant named Maxim's, capitalizing on the public's familiarity with the esteemed Parisian restaurant of the same name. See Vaudable v. Montmartre, Inc., 123 U.S.P.Q. 357 (N.Y. Sup. Ct. 1959); see also Maison Prunier v. Prunier's Restaurant & Cafe, Inc., 159 Misc. 551, (N.Y. Sup. Ct. 1936) (involving a similar lawsuit by another prominent Parisian restaurant).[6] The Second Circuit has not yet recognized the famous marks doctrine. The court noted its existence in a footnote in Buti but concluded that its application would not be warranted under the facts of the case even if the plaintiff, a "Grand Fashion Cafe" in Milan claiming against New York's "Fashion Cafe," had invoked the doctrine. Buti, 139 F.3d at 104 n.2. In Empresa Cubana Del Tabaco v. Culbro Corp., 399 F.3d 462 (2d Cir. 2005), it expressly declined to reach the issue of whether the famous marks doctrine was a valid exception to the territoriality principle, having

_____

[6]In regard to plaintiffs' state law claims, the famous marks doctrine will be recognized. Although it has not ruled on the issue, it is probable that the New York Court of Appeals would recognize the doctrine. This is particularly true in light of the fact that it is easier for a plaintiff to establish the protectability of a mark for a New York common law unfair competition claim than to do so under Lanham Act Section 43(a). Under New York law, a plaintiff does not have to establish that a trade name has acquired secondary meaning within the relevant market to prevail. Rather, the plaintiff needs only to establish a likelihood of customer confusion. Coach Leatherware Co. v. Ann Taylor, Inc., 933 F.2d 162, 169 (2d Cir. 1991).

found that the Cuban trade embargo statute banned U.S. recognition of property rights, including trademark rights, in the well-known Cohiba brand of Cuban cigars. Id. at 465.

There is little case law on the famous marks doctrine from federal courts generally, and the cases that exist vary in their conclusions regarding the level of fame required to render a foreign mark protectable. Within this district, the Empresana Cubana district court applied the doctrine, finding that the Cohiba mark for cigars was sufficiently famous within its scope to warrant protection. See Empresa Cubana del Tabaco v. Culbro Corp., No. 99 Civ. 8399 (RWS), 2004 WL 602295, at *39 (S.D.N.Y. Mar. 26, 2004). To determine the requisite level of fame, the court applied an existing test for "secondary meaning," employing the same factors used to determine whether a mark that is not inherently distinctive is protectable.[7] Id. at *35. More recently, the ITC court outlined the doctrine's history and possible scope but found that the plaintiff had failed to establish a triable issue as to the existence of secondary meaning in the relevant market. Noting the split in authority over whether secondary meaning, standing alone, established the requisite level of fame, it declined to reach the issue. See ITC, 2005 WL 351121, at *11. Only one federal circuit court has

_____

[7]The factors to be considered under this test are "(1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use." Empresa Cubana, 2004 WL 602295, at *35 (quoting Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 143 (2d Cir. 1997)).

18

applied the doctrine to date.  See Grupo Gigante S.A. de C.V. v.
Dallo & Co., 391 F.3d 1088 (9th Cir. 2004).  In Gigante, the
court announced that it recognized the famous marks doctrine as
an exception to the territoriality principle, see id. at 1094,
but stated that "secondary meaning" was not enough, fearing such
a standard would eviscerate the territoriality principle, id. at
1098.  Rather, "where the mark has not before been used in the
American market, the court must be satisfied, by a preponderance
of the evidence, that a substantial percentage of consumers in
the relevant American market is familiar with the foreign mark."
Id. (emphasis in original).

Recognition of the famous marks doctrine is particularly
desirable in a world where international travel is commonplace
and where the Internet and other media facilitate the rapid
creation of business goodwill that transcends borders.  One of
the purposes of the doctrine is to protect businesses from having
their goodwill usurped by "trademark pirates who rush to register
a famous mark on goods on which it has not yet been registered in
a nation by the legitimate foreign owner."  4 J. Thomas McCarthy,
McCarthy on Trademarks § 29:61.  Moreover, given that "avoidance
of consumer confusion is the ultimate end of all trademark law,"
International Bancorp, 329 F.3d at 381, a doctrine that prevents
consumers from being misled by trademark pirates is a warranted
application of the Lanham Act, particularly because consumers
themselves cannot sue under Section 43(a).  See Berni, 838 F.2d
at 648.

In the absence of contravening authority from the Second Circuit, the doctrine will be applied in this case if appropriate. It is a narrow but justified exception to the territoriality principle and the general rule that trademark rights attach only where a mark is used in connection with goods or services. In addition, one highly respected commentator opines that application of the famous marks doctrine is required by the Paris Convention for the Protection of Industrial Property, Article 6 bis. 4 McCarthy § 29:61. Lanham Act Section 44(b) provides for the enforcement of treaty obligations, and Section 44(h) provides that trademark infringement remedies "shall be available [to those persons whose country of origin is a party to a convention or treaty with the United States] so far as they may be appropriate in repressing acts of unfair competition." 15 U.S.C. §§ 1126(b), 1126(h); see 4 McCarthy § 29:61.

Although the plaintiffs' motion to dismiss has prompted this analysis of the famous marks doctrine, it is difficult to conceive of a circumstance in which the motion to dismiss this counterclaim could be granted. Whether the DE BEERS mark has achieved the requisite level fame in the United States to merit protection remains a question of fact that cannot be resolved in a motion to dismiss.[8] Plaintiffs' motion to dismiss the declaratory judgment counterclaim is accordingly denied.

---

[8]The parties will be given an opportunity to brief the issue of the level of fame required under the doctrine if it is implicated in their summary judgment practice.

B.  Restraint of Trade

Plaintiffs also move to dismiss defendants' counterclaim for a Sherman Antitrust Act violation.  The defendants allege that plaintiffs and the Additional Counterclaim Defendants conspired together to commence this litigation, as well as a United States Patent and Trademark Office ("USPTO") proceeding, "in an effort to prevent or obstruct counterclaim plaintiffs from competing with them in the diamond business, and thus to restrain trade and interfere with defendants' business relationships in violation of 15 U.S.C. §§ 1-2."  Defendants argue that the current lawsuit and the USPTO proceeding are "sham proceedings" because plaintiffs have no enforceable rights in the DE BEERS mark in the United States.

The first Sherman Act provision cited by the defendants provides in relevant part as follows:  "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."  15 U.S.C. § 1.  The second provision punishes persons who "shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States."  15 U.S.C. § 2.

Under the Noerr-Pennington doctrine of immunity from antitrust litigation, however, plaintiffs cannot incur antitrust liability for instituting a lawsuit unless the litigation is a sham.  To qualify as a sham, a single action (1) must be

21

"objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and (2) must conceal "an attempt to interfere directly with the business relationships of a competitor through the use [of] governmental process -- as opposed to the outcome of that process -- as an anticompetitive weapon." Prof'l Real Estate Investors v. Columbia Pictures, 508 U.S. 49, 60 (1993) (emphasis and citation omitted) (applying doctrine to copyright litigation). Therefore, "an objectively reasonable effort to litigate cannot be sham regardless of subjective intent." Id. at 57. A "reasonable belief that there is a chance that a claim may be held valid upon adjudication" provides an absolute defense precluding a finding of an antitrust violation. Id. at 62-63 (citation omitted). Where litigation is objectively reasonable, there is no ground to inquire into a litigant's motives. Id. at 65; see also Primetime 24 Joint Venture v. Nat'l Broadcasting Co. Inc. et al., 219 F.3d 92, 101 (2d Cir. 2000) (noting that a different Noerr-Pennington test applies to an antitrust claim premised on the institution of a series of legal proceedings).

It is apparent from the face of the complaint that the litigation is not "objectively baseless." Plaintiffs' allegations would have survived a motion to dismiss, had defendants filed one. As already discussed, there is precedent for application of the famous marks doctrine. In addition, a case decided by the Federal Circuit, Jewelers Vigilance Committee, Inc., v. Ullenberg Corp., 853 F.2d 888 (Fed. Cir.

1988), supports plaintiffs' contention that their lawsuit has
merit.  In that case, the court reversed a decision of the United
States Patent and Trademark Office Trademark Trial and Appeal
Board, who had approved a trademark application for the mark
"FOREVER YOURS/DEBEERS DIA. LTD." filed by a party who had no
connection to De Beers Consolidated Mines, Ltd., and granted
summary judgment to a nonprofit trade association representing
diamond wholesalers and retailers.  _Id._ at 889.  The Federal
Circuit held that the mark was likely to cause confusion with the
famous name "DEBEERS," noting that "no dispute [was] raised with
respect to the alleged fact that the name DEBEERS has an
established trade identity in the United States in connection
with diamonds."  _Id._ at 893-94.

Because it is clear even at this early stage of the
litigation that the defendants will be unable to show that the
plaintiffs' trademark claims are objectively baseless, this is an
appropriate case for the application of _Noerr_-_Pennington_
immunity.  The defendants' antitrust counterclaims are dismissed.


III.  Motion for Joinder of Necessary Parties Under Rule 19(a)

The defendants move to join the Additional Counterclaim
Defendants as necessary parties under Rule 19(a), Fed. R. Civ. P.
The defendants assert that this action will determine contractual
rights of the Additional Counterclaim Defendants, who thus risk
prejudice to those rights if they are not joined as parties.
They also argue that the Additional Counterclaim Defendants may

subject them to duplicative future litigation if the Additional Counterclaim Defendants are not bound by the outcome of the action.

Rule 19(a) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party to the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Persons that meet the criteria of either prong of Rule 19(a) are known as necessary parties to an action.  The court must order the joinder of a necessary party, or, if joinder is not feasible, must consider whether a party is indispensable under Rule 19(b), Fed. R. Civ. P.  <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 188 (2d Cir. 1999) (reversing finding that absent party was a "necessary" party).

In the patent realm, it is well-established that an assignor of all United States rights to a patent is not a necessary party to an infringement action.  <u>See</u> <u>Vaupel Textilmaschinen KG v. Meccanica Euro Italia A.P.A.</u>, 944 F.2d 870, 873-74 (Fed. Cir. 1991) (citing <u>Waterman v. McKenzie</u>, 138 U.S. 252, 255 (1891) (holding that an assignment of "the whole patent, comprising the exclusive right to make, use, and vend the invention throughout the United States" gives an assignee the right to sue on its own

for infringement)).  This principle extends to other forms of

intellectual property.  "This is necessarily the case inasmuch as

the assignee of a copyright, patent, or trademark is the owner of

the subject matter of the litigation."  7 Wright et al., Federal

Practice & Procedure § 1614 (3d ed. 2001).  Although case law is

sparse regarding whether assignors of trademarks, in contrast to

assignors of patents, are generally necessary parties to an

action, at least one district court has held that the assignor of

a trademark is not a necessary party to an action for

infringement.  See Shima American Corp. v. S.M. Arnold, Inc., No.

88 C 10064, 1989 WL 65014, at *2 (N.D. Ill. June 7, 1989).

Indeed, there is even authority for not requiring joinder of a

co-owner of an intellectual property right.  For instance, while

all co-owners customarily must join as plaintiffs in a patent

infringement suit, "where the co-owner of a patent or other

entity or individual whose interest in a patent might be directly

affected by litigation has specifically disclaimed all interest

in pursuing litigation related to the patent in favor of the

party who has brought the suit, courts have held that joinder of

the co-owner or other entity or individual is not necessary."

Agilent Technologies, Inc. v. Micromuse, Inc., No. 04 Civ. 3090

(RWS), 2004 WL 2346152, at *7 (S.D.N.Y. Oct. 19, 2004) (citing

Vaupel Textilmaschinen, 944 F.2d at 875-75).  In Agilent, a co-

owner had granted the exclusive right to enforce the patent to

the plaintiff.  Id.  Even though the co-owner had not explicitly

agreed to be bound by the judgment or affirmatively relinquished

25

the right to sue the defendant for past infringement, the court held that Rule 19 did not require its joinder at that time.  Id. at *8-*9.

The plaintiffs represent that United States trademark rights in DE BEERS for jewelry, luxury goods, and retail store services have been assigned to them.  In addition, De Beers Trademarks Limited, on behalf of itself and its parents and affiliates, executed a release on November 29, 2004 ("Release") that bars it from asserting against the defendants any claims that are, could have been, or are required to be asserted in this action for any conduct or events that occur prior to entry of a final judgment in this litigation.  Because of the assignment of rights to the plaintiffs and this Release, the Additional Counterclaim Defendants will not be deemed necessary parties unless plaintiffs are unable to establish the validity of the assignment.  Complete relief can be granted without the joinder of the Additional Counterclaim Defendants.  The Release sufficiently protects the defendants so that they are not at substantial risk of incurring multiple or inconsistent obligations.

None of the cases cited by defendants commands a different conclusion.  In Jonesfilm v. Lion's Gate Int'l, 299 F.3d 134 (2d Cir. 2002), the court reversed the district court's determination that the holder of a conditional option for film rights was a necessary and indispensable party.  The nonparty film producer had received the option from the plaintiff, owner of the trademark, and had in turn sold it to the defendants.  The

defendants made a film without performing a precondition to exercising the option to do so; plaintiff sued for trademark infringement.  Although the court noted that a nonparty is likely to be a necessary party "[i]f the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract," id. at 141, it concluded that there was no dispute regarding the fact that the precondition had not been performed by either the nonparty producer or the defendants in the case. There was thus "a clear basis for deciding that the defendants had no right to make an additional movie . . . that would not affect [the nonparty's] interests." Id. at 142.  Jonesfilm did not address whether an assignor of trademark rights is a necessary party in an action brought by an assignee to enforce the trademark rights against a third party.  As significantly, it carefully examined the factual context of the claims and determined that as a "practical matter," the absent party's contractual rights were unaffected by the dispute.  Id. (citing Rule 19, Fed. R. Civ. P.).

Although plaintiffs in this case must establish rights to the DE BEERS trademark as a threshold standing matter, the dispute between plaintiffs and defendants does not center around the construction of a contract.  To the extent any contract is at issue, it is the assignment, which establishes rights in the plaintiffs, who are fully able to protect these rights in this litigation.  Moreover, as a practical matter, the ability of the Additional Counterclaim Defendants to protect their rights in the

DE BEERS trade name is not impeded or impaired by their absence from this litigation. Through the assignment and Release they have explicitly transferred their interests in this regard to the defendants. To conclude that the mere determination that an assignment exists renders the assignor a necessary party would entirely swallow the rule of <u>Waterman</u>. <u>See</u> <u>Waterman</u>, 138 U.S. at 255.

Several cases cited by defendants, including <u>Mann v. City of Albany</u>, 883 F.2d 999, 1002-03 (11th Cir. 1989), and <u>Schutten v. Shell Oil Co.</u>, 421 F.2d 869, 874-75 (5th Cir. 1970), involve situations in which the threat of future litigation by a nonparty existed, a possibility that, as discussed above, is not present here. One case discusses in <u>dicta</u> the principle that the licensor of a trademark may be a necessary party when an infringement action by a licensee. <u>See</u> <u>Ass'n of Co-op Members v. Farmland Indus.</u>, 684 F.2d 1134, 1143 (5th Cir. 1982). Other cases involve situations in which the validity of the assignment or license was in active dispute, and courts ruled that the assignor or licensor was a necessary party because of the pending dispute. <u>See</u> <u>Central DuPage Hosp. v. Industrial Concrete Constr. Corp. ERISA Plan</u>, No. 91 C 2235, 1991 WL 182269, at *3 (N.D. Ill. Sept. 5, 1991); <u>Messerschmitt-Boelkow-Blohm GmbH v. Hughes Aircraft Co.</u>, 483 F. Supp. 49, 52 (S.D.N.Y. 1979); <u>United States v. Barrett</u>, 315 F. Supp. 941, 946 (N.D. W. Va. 1970). As already discussed, the central issue here is one of alleged infringement, not a dispute over an assignment. The defendants' motion for

joinder is denied.

## Conclusion

The motion to strike the affirmative defense of unclean
hands is granted. The motions to strike the affirmative defense
of lack of standing and to dismiss the declaratory judgment
counterclaim are denied. The motion to dismiss the counterclaim
for a violation of the Sherman Antitrust Act is granted. The
motion to join the Additional Counterclaim Defendants as
necessary parties under Rule 19(a), Fed. R. Civ. P., is denied.

SO ORDERED:

Dated:     New York, New York
           May 18, 2005

                                    _____
                                           DENISE COTE
                                    United States District Judge